We move to the third case this morning. Carpenters Pension Trust Fund v. Allstate. Good morning, Your Honor. John Clark for the defendants, Allstate Corporation, Thomas Wilson, and Matthew Winter, the appellants in this interlocutory appeal. Your Honor, the District Court here committed reversible error when it refused to address defendants' evidence that the statements plaintiffs alleged were misrepresentations, had no price impact, therefore rebutting the presumption of reliance that plaintiffs invoked under Basic Inc. v. Levinson. Without the basic presumption, plaintiffs cannot satisfy the requirement in Rule 23b-3 of the common issues predominant over individual issues. In this court, do you agree with the Second Circuit, Goldman Sachs' decision that on this issue of lack of price impact, the burden is on the defense? Your Honor, I agree that what Halliburton II establishes is a burden-shifting regime. Basic Inc. establishes a presumption. The court in Basic itself recognized that that presumption can be rebutted by any showing that severs the link between the misrepresentation and the price paid for the decision to trade. And in Halliburton, the court said the defendants are entitled to invoke that rebuttable presumption. The answer is yes? Yes, Your Honor. The burden is on the defense. The burden is on the defense to rebut the presumption. But then, if the defense comes forward with the evidence, Parco and Halliburton II say that the district court is required to weigh the evidence and make findings. And the district court did not do that here. Yes, I understand. But I just want to make sure we're clear on the burden of proof on this. Thank you. Counsel, I just want to understand why your argument isn't a straightforward Amgen argument for materiality or truth on the market argument. Your Honor, I think that's an excellent question. Halliburton II expressly addressed that argument, which is the plaintiff's principle argument in support of the district court here. And I think, in essence, what it comes down to is this. It isn't a question of the nature of the evidence that's being presented. It's a question of the issue that the evidence is being presented for. Therefore, in Amgen, the court concluded, while materiality was certainly essential to the presumption of reliance, it was also an essential independent element for any claim for securities fraud. So, for example, even if the individuals have to sue for securities fraud in a decertified class, they would still need to show materiality. Therefore, everybody rises and falls together. But on reliance, as the Halliburton II court recognized, the basic ink presumption is different. And price impact goes to the heart of that presumption. So, and in fact, in basic ink, the court listed ways that price impact might be shown to rebut the presumption, such as that market makers were aware of the information that allegedly was concealed from the market. That's one way expressly recognized in basic to rebut the presumption. In Halliburton II, the court said defendants must be given the opportunity to present that evidence and rebut the presumption at the class certification stage because the presumption of reliance goes directly to the predominance requirement. Unlike materiality, which flows through to the merits, and even though it also can be relevant to the availability of the basic presumption, it isn't essential to that presumption in the way that price impact is. But you're simply saying, like, well, this couldn't have affected the price because it wasn't material because the market was already aware of it. As opposed to, say, in the Second Circuit case, it's showing, well, there was no market reaction to the alleged statement you identified. And because we see no spike or no dip, that destroys the basic presumption. Halliburton II is very clear that courts cannot artificially limit the evidence that a defendant can present to show a lack of price impact. And Basic Inc., as I mentioned, expressly recognized that the awareness of the market of allegedly undisclosed information is a way to rebut the basic presumption. There's nothing in Halliburton II or in Halliburton I or Amgen or Walmart or Comcast that says the only way to rebut price impact is to introduce an event study. Now, our economic expert did introduce an event study, but she also showed that the market price of all state stock already impounded the information that the plaintiffs allege was withheld or concealed from investors during the class period. So, well, we get to Dr. Allen's study. Where did she address the 10% price drop on August 4th? Ms. Allen did not directly respond to that price drop. What she said was the information that the plaintiffs claimed was the revelation of the truth. So what does she, how does she explain the 10% price drop? She doesn't explain the 10%. She says that the 10% price drop is not evidence of price impact. Just random? No, it's a reaction to non-fraud causes of the alleged inflation. Where does she say that? She says that in her report addressing the August 4th disclosure. Could you direct me to that? I'm sorry, Your Honor. Now we're on rebuttal. It doesn't need to be right now. She specifically goes through the expected decrease that was the result of the somewhat inevitable effect of rapid growth on claim frequency, which the market already understood. And that was different from the unexpected result of the third consecutive quarter of increased claim frequency. Her theory there, if I recall correctly, was that Allstate was kind of the first of the property and casualty companies to incur that kind of, or to report that kind of loss, right? In essence, what her report showed was that Allstate was ahead of its competitors. Some of its competitors had actually disclosed that. Right. So did she quantify whether there were similar movements in prices of other competitors? She did not do that, Your Honor. Wouldn't that seem kind of important in evaluating this evidence? Your Honor, the question of the quantum of the price impact evidence is a separate question from whether the district court should consider the price impact evidence. I know, but it is important that if we agree with you that we need to remand, I'm very interested in what the scope of that might be. Do you have evidence of a lack of price impact apart from Dr. Allen's report? Your Honor, no. Dr. Allen's report and the materials that it incorporates are the evidence that the defendants offered. Was she deposed? She was. Okay. How about Dr. Finnerty? Was he deposed? No. We did not take his deposition. Okay. Dr. Finnerty's report focused solely on two issues. One, market efficiency. The second was the formulation for calculating damages on a class-wide basis. Okay. Go ahead. I'm sorry. We didn't make an argument under Comcast about that methodology. And with regard to the damages methodology and with regard to efficiency, Ms. Allen proceeded from the assumption that the market was efficient. Okay. So let me, there's a question that I'd like to, this is an important case. That's why we granted the 23-F petition in the first place. With respect to how district judges and magistrate judges cope with these cases as we try to deal with these very slippery distinctions among Amgen, Halliburton I, Halliburton II, and so on. So let me ask you about a case management issue that I hope plaintiffs will also address. And that has to do with how discovery is handled. Because for decades now, federal judges have been trained in dealing with class actions to consider bifurcating class discovery from merits discovery. In this particular niche of federal securities fraud litigation, it doesn't seem like there's really much of a distinction. Well, Your Honor, I agree. I think that's very similar to Judge Barrett's question in that I think that the questions of loss, causation, materiality, and price impact all overlap in some ways. Was there a bifurcation order here? There was no bifurcation order in this case. And in fact, we were proceeding with merits document production at the same time that we were doing class discovery. We took depositions of all of the representative plaintiffs and the representative plaintiffs' financial managers, of which there were many. And we did have Ms. Allen sit for a deposition requested by the plaintiffs. To follow up a little bit, is it possible, as you see it, to have a finding of price impact without finding materiality, without finding loss causation? Your Honor, yes, it is. And I think that the district court decision in the CoreCivic case, which is captioned Corrections Corp. of America, which is cited, discussing Gray versus Corrections Corp. Oh, this is the Tennessee case? Exactly, Your Honor. That's a decision on reconsideration by the district judge, who originally denied a class certification order. But in this reconsideration order, based on new evidence, changed that decision and certified the class. But in reaching that decision, the district judge examined this exact question. How do you reconcile Amgen, the truth on the market, the fact that truth on the market can't be presented, and Halliburton 1, the idea that you can't require a plaintiff to show loss causation, and Halliburton 2, that says, right, but you have to allow the defendant to try to rebut price impact at class certification. How do you reconcile that? And she said, the idea that things can be separated into neat boxes, that evidence over here is only evidence for loss causation, and then this evidence over here for price impact, or this evidence for materiality, is unrealistic. In these cases, this evidence could be relevant to all of those inquiries, or to damages, too, and you can't neatly segregate those issues, nor, as Halliburton 2 said, can you artificially limit the defendant in the evidence that the defendant can present. Any showing that severs the link between the alleged misrepresentation and the price paid or the decision to trade is sufficient to rebut the basic presumption. And yes, it's the defendant's burden to produce that evidence and convince the judge of that on a preponderance of the evidence standard, but any evidence doesn't mean you must use an economist. You must have an event study. It means any evidence, and in Basic Inc., specifically, the idea that market makers knew what the alleged fraud supposedly concealed is one of the ways that you can rebut basic presumption. Mr. Clark, you've argued in your briefs that we should decide the price impact issue ourselves. Your Honor. Frankly, I can't imagine doing that in your favor in the first instance, but I wonder if there are any other examples of appellate courts reaching such a conclusion in the first instance in these cases. Your Honor, perhaps that argument was a little bit of an overreach because at a minimum this case should be reversed and sent back to the district judge. But the answer is the closest case would be the Eighth Circuit decision in Best Buy where they did remand for further proceedings, but the result of the remand was essentially the same as a reversal on the record. Well, it depends on the fact finding. And here there's plenty of room for debate, I would think. Could I also ask you about your China Agritech argument? Certainly. You've argued that China Agritech should be extended to the substitution or addition of class reps in the first timely class action that's brought. That kind of rearranging of class representation has long been pretty routine. China Agritech didn't say anything about that practice directly. And what concerns me that I'd like you to address is that it would seem to make it very difficult or kind of randomly difficult if we were to adopt your extension of China Agritech for a district court to divide a proposed class, to create subclasses and so on who all need their own representatives who may not have initially brought proposed class actions themselves. Your Honor, I have at least two comments in response to that. In the first instance, I don't think our argument is that we're trying to extend China Agritech at all. Well, I think you are, but okay. Our argument is that what China Tech recognized is that American Pipe and Crown Court Conceal never said anything about tolling class claims and that in fact in China Agritech the court said they don't toll class claims. And therefore, we're simply applying China Agritech. You're seeking an extension to a new situation in which I'm suggesting it has long been routine. Since class actions since the 1960s, class actions have often reshuffled the representation of classes, have created subclasses, divided classes and so on. Could you address that problem? Certainly, Your Honor. Two points. One, the plaintiffs never argued for relation back in this case ever and have waived that argument. But that would be a solution. Well, they won. But they didn't say that even if they're wrong on tolling, the claims relate back. So they never made a Rule 15 argument, which would be one answer to that concern. But that argument is waived in this case. Second, in any event, the PSLRA provides for rapid appointment of a lead plaintiff. Rule 23 calls on district courts to address class certification at the earliest possible time. No, it does not anymore. Not the earliest possible time. That was changed, right? It calls on district courts to address class certification early in the proceedings, not later in the proceedings, which can address the concern that the time is running on other potential class representatives. But if there are concerns in framing the class, then there's no reason why that burden can't be put on the class representatives who bring the case in the first place. Okay, but just so we're clear, if we were to adopt your theory and the class action is filed a week before the statute runs, there would essentially be no opportunity to fix these sorts of problems, to subdivide classes, et cetera, right? Well, Your Honor, I would have to think that through. I think that the answer is there may be a relation back argument in the first place. But in the second place, as the Supreme Court recognized in China Agritech, there's nothing in the federal rules that says you have a right to bring a class action forever. And if plaintiffs sleep on their rights until... Nobody's suggesting that. The question is how we interpret China Agritech. And what I'm trying to suggest is that you are reading it so broadly as to interfere kind of randomly with a routine case management process. Well, Your Honor, I look at it a different way. The way I look at it is that American PIPE changed a statute of limitations rule. The statute of limitations is a statute. American PIPE used equitable principles to say, we're not going to hold you to a statute if you're an individual who's represented putatively in a class action. And we're going to protect you by extending that out. Now, it didn't address whether somebody else could assert class claims on your behalf. But it said you're protected if you choose to opt out or if the class is not certified, you can then bring it, and this time won't count against you. That's an equitable doctrine. Your Honor, China Agritech says that equitable doctrine does not extend to the right to bring claims on behalf of a class. If you're going to do that, you need to act quickly. The Supreme Court majority said exactly that. Your Honor, I will preserve the rest of my time for rebuttal. Thank you. Thank you, counsel. Mr. Hoffman? Good morning. May it please the Court, my name is Tom Hoffman from the Labaton-Suchero firm on behalf of plaintiff's appellees. Mr. Hoffman, I want to ask you a question because what Judge Hamilton was just asking your opponent bears on a question that I have. Why didn't you address relation back? Because we have precedent in this circuit that's pretty generous matters of relation back when it comes to adding or substituting plaintiffs. It seems to me like the tolling doctrines really apply when you're talking about new claims being asserted, whether it be because of the filing of individual suits or because someone's intervening under Rule 24, but why didn't you make the relation back argument? Your Honor, that's a good question. I think the answer is we didn't think we needed to because the China Agritech argument, as the previous colloquy suggests, is limited to instances of class action stacking. But you didn't need American pipe, is guess what I'm saying. We didn't need American pipe because, well, we need American pipe to toll the statute of limitations, which I don't think even had expired at the time. Excuse me, it had arguably expired at the time that Providence brought their claims. I guess what I'm saying is I don't think you need American pipe. I don't think you need tolling if you have relation back under Rule 15. And I guess the answer is maybe we could have made the two arguments and the alternative, but we didn't think we needed to in this case. As Your Honor suggested earlier, it's long been the class action practice to allow intervention of this type to add an additional class representative, for example. And none of the authorities that defendant cited conflict with that longstanding practice. I'd like to go straight to the Amgen issue, which was the primary subject of the previous colloquy. I think defendants, in large part, argue that the district court's order was simply too short, but brevity is not an abuse of discretion where the court decides the issues presented pursuant to controlling law, which is exactly what the court did here. The district court correctly applied the controlling precedent of Amgen. And let me try to answer the primary question I think the court has been interested in, which is, how do you square Amgen with Halliburton II and its progeny? And I think there is a way to do that. So here, just as background, the district court rejected the defendant's Amgen argument, saying that it was, in fact, a premature truth on the market defense masquerading as a rebuttal of price impact. And defendants don't even agree that what they've asserted is a truth on the market defense. But as articulated by the district court, the district court said, defendants' opposition is based primarily on the argument that the market was well aware of all states' efforts to grow its auto insurance business, including softening or lowering its underwriting standards, thus leading to an increase in claims frequency. That's in the record at A2. And that's a classic truth on the market defense, as Your Honor pointed out earlier. But as Amgen teaches, a truth on the market defense is a method of refuting the materiality of the alleged misstatements and omissions, and therefore is premature at this phase. And what defendants essentially argue here is that Halliburton II, sub silentio, overruled that portion of Amgen that explicitly held in rejecting the defendant's attempt to assert a truth on the market defense in that case, it explicitly reasoned, and I quote, proof of that sort is a matter for trial or a summary judgment motion. That's at 568 U.S. 480 at 481-82. Defendants essentially urge this court to do what no court has ever done before and hold that Halliburton II, sub silentio, overruled that portion of Amgen. No, that's not what they're asking the courts to do. They're asking us, what the Supreme Court is directing us to maintain different analytic channels, in essence, for considering the same evidence at different stages of the case. I can imagine it drives the litigators in this area crazy. It's obviously been driving some judges in the district and circuit courts a little bit nuts. Both the Halliburtons were reversals, right, of what the district judge had done. She thought she'd done the right thing after the first remand, and lo and behold, no. Same evidence, now you can consider, as long as it's framed as price impact. So reconcile, not overrule. I understand the court's concern, and let me suggest we have a line drawing problem here, and here's where you draw the line. So let me give you four problems with defendant's argument here. Number one is that Halliburton II, not surprisingly, discusses Amgen at length, and it builds a sort of firewall between these price impact issues on the one hand and the materiality issues raised in Amgen on the other. Chief Justice Roberts wrote, and I quote, the question in Amgen was whether plaintiffs could be required to prove or defendants be permitted to disprove materiality before class certification. And he goes on at length and ends up with, because materiality is a discrete issue that can be resolved in isolation from the other prerequisites for class certification, it can be wholly confined to the merit stage. That's Halliburton II, 573 U.S. 258 at 282, discussing Amgen. Therefore, under Halliburton II, at the class certification stage, district courts must rigorously analyze appropriate evidence at the class certification stage. However, they may not entertain a mini trial on the issue of materiality, because that would be an impermissible end run around Amgen. I understand that, but I can't imagine finding price impact without finding materiality implicitly. Well, let me suggest an answer to that. First, let me move to the second problem with defendants' argument, which I think answers that in part. So the second problem is that not only the language of Halliburton II, but on remand in the Halliburton case itself, the district court rejected the exact same truth on the market style argument that defendants make here, reasoning, and again I quote, it was in effect a veiled attempt to assert the truth on the market defense, which pertains to materiality and is not properly before the court at the stage of the proceedings. That's 309 FRD 251 at 260. Third problem. Was that the remand after one or two? This is the remand after two. OK. Exactly. Exactly right, Your Honor. And that brings up the third problem with defendants' argument, is that post-Halliburton II, courts unanimously have rejected truth on the market type arguments or premature truth on the market defenses as inappropriate under Amgen. We've cited numerous district court cases in our papers. I won't go into them all. But for example, just last year in the Walgreens case, the Northern District of Illinois reasoned that quote, numerous courts have agreed that a truth on the market defense cannot be used to rebut the presumption of reliance at the class certification stage, citing Amgen and several other cases. Counsel, let me ask you, how could the defendant show lack of price impact without showing materiality? That actually brings me exactly to my fourth point, which are even the cases cited by defendants recognize this distinction between proper price impact arguments on the one hand and improper truth on the market defense on the other. So what's an example of a proper one in your view? An example would be in the Goldman Sachs case, Your Honor. So in that case, the defendants weren't arguing, as they argue here, that the truth was on the market before any of the alleged misstatements and omissions. In that case, the defendants argued that during the class period, so after the misstatements, the truth went on the market in several ways, but including in a New York Times article, for example. And there was no stock price reaction to that New York Times article. That, we would submit as a proper truth on the market argument. And importantly, the Second Circuit in that case first decided that the defendants were not asserting an improper and premature truth on the market defense, because they weren't asserting, as defendants assert here, that the truth was on the market before any of the alleged misstatements and omissions. Therefore, essentially making the misstatements and omissions a nullity. That is a truth on the market defense. But there are other ways in which defendants can assert a price impact argument, as in the Goldman Sachs case, as in the Gray case that opposing counsel mentioned just a few minutes ago. However, importantly, in both the Goldman Sachs case, the Second Circuit, and in the Gray case, the district court first determined that they would analyze defendants' price impact evidence only after explicitly deciding that the defendants in those cases were not asserting a premature truth on the market argument. That, I would suggest, is the gate. Therefore, as in Goldman and in Gray, we believe that courts should consider price impact arguments and evidence only after determining that defendants are not, in fact, asserting an improper and premature truth on the market defense, which is impermissible under Amgen, explicitly, and would represent an end run around Amgen and open the gates to materiality arguments of all sorts at the class certification stage. Mr. Hoffman, if we were to disagree with you and find that the district judge did not engage sufficiently with this evidence to the extent it addresses price impact, what do you think should happen on remand? What should happen on remand is the court should remand with guidance. There, I believe the defense will fail because it's entirely, number one, based on a mischaracterization of plaintiffs' claims. The defendants say that our central allegation in this case is that we allege that Allstate concealed its underwriting standards. That's not what this case is about. There are two parts to this case. First, the complaint alleges that defendants concealed a large and unprecedented spike in Allstate's claims frequency that began in October of 2014. Defendants made those misstatements and omissions in October and December of 2014. So, counsel, these are arguments that you want to make to the district court on remand, right, just to kind of bring... These are arguments... You're explaining why you can win on remand, but just to kind of more concisely answer Judge Hamilton's question. Exactly. These are arguments that we made before the district court. To be clear, the district court determined that he didn't need to go there because they were asserting a premature truth on the market defense, but all of these arguments were before the district court. There was a battle of the experts. Both sides submitted their expert reports, but the district court did what we submit is appropriate by, number one, determining whether or not the defendants had gotten over the hurdle of Amgen before proceeding to the price impact evidence. Here, he held that defendants didn't clear that hurdle, and therefore, he did not consider this evidence, but we would submit that when he does consider the evidence, defendants' argument really makes no sense because, number one, it's about a failure to disclose a large increase in all states' claims frequency between October of 2014 and February of 2015. Those misstatements are alleged at paragraphs 57 through 70 of the complaint, which are in the record at A26 through 29. When all states finally disclosed that spike a few months later, then the complaint alleges further misstatements and omissions about the causes of that spike, and those are alleged in the complaint which is in the record at 29, A29 to 36. And those are the arguments that you want to make to the district court on remand? Yes, and these are the arguments we did make, and if necessary, we will make again. I just want to make the point that the truth on the market defense in this case doesn't actually go to the allegedly concealed truth in this case. As Your Honor pointed out, after the final corrective disclosure in this case, when it turns out that all states' claims frequency had persisted for three consecutive quarters, and importantly, in response, all state was tightening up those underwriting standards again, there was a 10% stock drop in all state shares, which is significant evidence of price impact, obviously. It was the largest one-day decrease in the past 10 years, by the way. Plaintiffs submit that the defendant's price impact argument makes no sense because it's entirely based on the idea that before any of the alleged misstatements and omissions, all state disclosed that it had softened its underwriting criteria, but that doesn't go to either side of the case, and particularly doesn't go to the second portion of the case, which is about the causes of the frequency increase that all state began to experience in 2014. I see that my time is almost up. Unless the Court has any further questions, I urge you to affirm the District Court's decision. Thank you. I'll give you a minute, Counsel. Thank you, Your Honor. Very quickly, with regard to Judge Hamilton's question about Ms. Allen's analysis, I would direct the Court to paragraph 58 of her report, which was in our appendix at A238, where she explained that she found there was no price impact because, contrary to plaintiff's claims, the fact that all states' new business growth would cause higher auto claim frequency was expected by the market prior to the August 3rd corrective disclosure, and continues that explanation. She segregates the expected decline, which was impounded into the price of all state stock, with the unexpected decline, which resulted from the disclosure of non-fraudulent information that all state had a third quarter of consecutive increases in claim frequency. Glickenhaus makes it clear a corrective disclosure is only a corrective disclosure for purposes of securities litigation if that's a disclosure that reveals the truth. But the market always understood that all state had expanded its underwriting criteria, softened it, broadened it, greatly reduced, however you want to phrase it, and that the growth that all state was pursuing was going to be somewhat inevitably going to increase claim frequency. Thank you, counsel. Your Honor, we'll rest on the papers for the remaining questions with regard to the case law. Thank you very much for the time. We urge the court to reverse. Thanks to both counsel, and the case is taken under advisement.